UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERRY KLEIN, derivatively on behalf
of LSB INDUSTRIES, INC.

    Plaintiff,

v.

KENT C. MCCARTHY, JAYHAWK CAPITAL
MANAGEMENT, L.L.C., JAYHAWK
INSTITUTIONAL PARTNERS, L.P.,
JAYHAWK INVESTMENTS, L.P. and LSB
INDUSTRIES, INC.

    Defendants.

"ECF CASE"

07 CV 8710 (LTS)

---

**PRELIMINARY PRE-TRIAL STATEMENT**

    The parties to the above-identified action jointly submit this Preliminary Pre-Trial Statement in this case:

    **a.    Nature of this action:**

    This is a derivative action brought on behalf of LSB Industries, Inc. ("LSB" or "the Company") by Terry Klein under Section 16(b) of the Securities Exchange Act of 1934 ("§16(b)") (15 U.S.C. § 78p(b)), seeking the disgorgement of alleged short-swing profits garnered by defendants Kent C. McCarthy ("McCarthy"), Jayhawk Capital Management, LLC ("Management"), Jayhawk Institutional Partners, LP ("Institutional"), and Jayhawk Investments, LP ("Investments"). Defendants Institutional,

Investments, and Management are investment firms. Management is a general partner and manager of Partners and Investments. Defendant McCarthy is the manager of Management and controls its activities.

The Complaint alleges that defendants Partners, Investments and Management (collectively, the "Jayhawk Group") constitute a group under § 13(d)(3) and § 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). The Complaint alleges that during the period October 2006 through March 2007 the Jayhawk Group garnered short-swing profits in transactions in equity securities of LSB which are subject to disgorgement to the Company. The Complaint further alleges that defendant McCarthy, in his capacity as manager and sole member of Management, has a pecuniary interest in transactions by members of the Jayhawk group.

The Defendants contend that the Complaint fails to assert a cognizable claim under the statute. Specifically, Defendants assert as affirmative defenses, *inter alia*, that (a) the "sale" transactions identified in the Complaint are exempt pursuant to SEC Rule 16b-3(e) because Defendants are deemed directors by deputization, (b) the alleged short-swing transactions were unorthodox transactions that did not present the possibility for speculative abuse, and therefore are excluded from Section 16(b) liability, and (c) that certain alleged transactions were in-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributees, and therefore are not "sales" or "purchases" under Section 16.

The Company, a nominal defendant, has taken no position with respect to the claims against the Defendants.

**b.   Jurisdiction:**

Plaintiff asserts that the jurisdiction of this court and venue in this district are proper pursuant to 15 U.S.C. § 78(a)(a). Defendants assert that plaintiff's allegation of jurisdiction calls for an answer concerning a question of law and take no position.

**c.   Uncontested Facts:**

1. Defendants Jayhawk Institutional Partners, L.P. ("Partners") and Jayhawk Investments, L.P. ("Investments") are Delaware limited partnership with their principal place of business at 5410 West 61st Place, Suite 100, Mission, KS 66205.

2. Defendant Jayhawk Capital Management, L.L.C. ("Management") is a Delaware limited liability company. Defendant Kent C. McCarthy ("McCarthy") is the manager of Management and controls its activities. Management and McCarthy have their principal place of business at 5410 West 61st Place, Suite 100, Mission, KS 66205.

3. At all relevant times, the Jayhawk Group owned in excess of 10% of the LSB's common stock.

4. On October 18, 2006, Investments received 9,210 shares of Class C Preferred, as a result of distributions by Primarius Focus and Primarius partners, L.P. Defendants deny

that this distribution constitutes a "purchase" for purposes of Section 16(b).

5. Investments purchased shares of Class C Preferred as follows:

| Date | Shares | Price |
|---|---|---|
| 12-15-06 | 800 | $74.50 |
| 12-15-06 | 2,500 | 75.50 |
| 12-18-06 | 500 | 72.00 |
| 12-22-06 | 100 | 75.00 |
| 12-29-06 | 100 | 89.00 |
| 01-04-07 | 162 | 78.00 |

6. On December 29, 2006, Investments received 1,600 shares of Class C Preferred, as a result of distributions by BCS Capital LP. Defendants deny that this distribution constitutes a "purchase" for purposes of Section 16(b).

7. On March 13, 2007, Investments disposed of 77,130 shares of Class C Preferred in exchange for 570,762 shares of Common Stock in an issuer tender exchange offer, and Partners disposed of 90,720 shares of Class C Preferred in exchange for 671,328 shares of Common Stock in an issuer tender exchange offer. Defendants deny that these transactions constitute "sales" for purposes of Section 16(b).

    d. **Uncontested legal issues:**

1. Section 16(b) of the Exchange Act provides that if a person, while beneficially owning more than 10 percent of a class of equity securities of an issuer, purchases and sells or sells and purchases shares of any equity security of such issuer within a period of less than six months, any profits arising from

those transactions are recoverable by the issuer or by a shareholder suing derivatively on its behalf.

   2. Under Rule 16a-1(a)(1) promulgated under the Exchange Act, where two or more persons "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer" as set forth in Section 13(d)(3) of the Exchange Act, such persons are deemed to be a "group" for purposes of determining § 16(b) liability.  Under SEC Rule 16a-1, the shares held by persons in such a group are aggregated to determine whether the group has a greater than 10% beneficial ownership in the issuing corporation. If the aggregate number of shares beneficially owned by the group exceeds 10%, each member of the group is deemed to be a greater than 10% beneficial owner and is liable to disgorge profits which such group member earned in stock transactions effected within a six-month period.

   3. SEC Rule 16b-3, provides an exemption for certain transactions between an issuer and its officers and directors. Rule 16b-3, in pertinent part, provides:

> d. *Acquisitions from the issuer.* Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:
>
>  1. The transaction is approved by the board of directors of the issuer, or a committee of the

       board of directors that is composed solely of two
or more Non-Employee Directors;

2. The transaction is approved or ratified, in compliance with Section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or

3. The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercises or conversion) or its underlying equity security.

e. *Dispositions to the issuer.* Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

17 C.F.R. § 240.16b-3(d) and (e).

    4. Exemptions to liability under the securities laws must be pleaded and proved by defendants. *Securities Exchange Commission v. Cavanagh*, 445 F.3d 105, 114 (2d Cir. 2006); *Rosen v. Brookhaven Capital Management Co., Ltd.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002).

e.  **Defendants' Statement of Legal Issues:**

1.  A person may be deemed a director for purposes of Section 16 of the Exchange Act by expressly or impliedly "deputizing" another to serve on its behalf. *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section II.F.2.d. Defendants' alleged "sale" transactions are exempt pursuant to SEC Rule 16b-3 because Defendants are deemed directors by deputization.

2.  Unorthodox transactions that do not present the possibility for speculative abuse are excluded from Section 16(b) liability. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 593-95 (1973); *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 310 (2d Cir. 1998); *Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, 118 (3d Cir. 2002); *Pier 1 Imports of Georgia, Inc. v. Wilson*, 529 F. Supp. 239, 242 (N.D. Tex. 1981); *Pay Less Drug Stores v. Jewel Companies, Inc.*, 579 F. Supp. 1396, 1400-01 (N.D. Cal. 1984). Defendants' alleged "purchase" transactions are excluded from Section 16(b) liability because they were unorthodox transactions that did not present the possibility for speculative abuse.

3.  In-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributees are not "sales" by the distributing entity or "purchases" by the recipient under Section 16 of the Exchange Act. *See Romeo and Dye, Section 16 Treatise and Reporting Guide,*

*Second Edition*, § 10.06[6].  Certain of the alleged transactions are excluded from Section 16 liability because they were in-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributees, not "sales" or "purchases" under Section 16.

      4.    Pro rata distributions upon liquidation of a partnership are exempt pursuant to SEC Rule 16(b)-3.  Certain of the "purchase" transactions alleged in the Complaint are exempt pursuant to SEC Rule 16(b)-3 as pro rata distributions upon liquidation of a partnership.

      5.    "[I]n order to invoke derivative standing pursuant to Federal Rule of Civil Procedure 23.1 and New York Business Corporation Law § 626(b), a plaintiff must have owned stock in the corporation throughout the course of the activities that constitute the primary basis of the complaint. . . . a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired." *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 298 (2d Cir. 2003).

      **f.**    **Legal Issues to be decided by the Court:**

      1.    Whether defendants Partners, Investments and Management constitute a group under § 13(d)(3) and § 16(b) of the Exchange Act.

2.  Whether the alleged "sale" transactions identified in the Complaint are exempt pursuant to SEC Rule 16b-3(e) because Defendants are deemed directors by deputization.

3.  Whether certain of the alleged short-swing transactions are excluded from Section 16(b) liability because they were unorthodox transactions that did not present the possibility for speculative abuse.

4.  Whether certain of the alleged transactions are excluded from Section 16 liability because they were in-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributes, not "sales" or "purchases" under Section 16.

5.  Whether certain of the "purchase" transactions alleged in the Complaint are exempt pursuant to SEC Rule 16(b)-3 as pro rata distributions upon liquidation of a partnership.

6.  Whether the distribution on October 18, 2006 to Investments of 9,210 shares of Class C Preferred, as a result of distributions by Primarius Focus and Primarius partners, L.P., constitutes a "purchase" for purposes of Section 16(b).

7.  Whether the distribution on December 29, 2006 to Investments of 1,600 shares of Class C Preferred, as a result of distributions by BCS Capital LP, constitute a "purchase" for purposes of Section 16(b).

8. Whether the March 13, 2007 exchange by Investments and Partners to the Company, respectively, of 77,130 and 90,720 shares of Class C Preferred for the Company's common stock, in an issuer tender exchange offer, constitute "sales" for purposes of Section 16(b).

9. Whether Plaintiff has standing to bring this action.

**g.    Statement of Disputed facts:**

1. Whether Plaintiff Terry Klein is a shareholder of LSB during the relevant time period.

**h.    Plaintiff's Statement of legal basis for each cause of action:** See statement of uncontested legal issues above.

**i.    Defendants' Statement of the legal basis for each asserted affirmative defense:**

1. The alleged "sale" transactions identified in the Complaint are exempt pursuant to SEC Rule 16b-3 because Defendants are deemed directors by deputization. SEC Rule 16b-3(e) provides that "[a]ny transaction . . . involving a disposition to the issuer of issuer equity securities . . . shall be exempt, provided that the terms of such disposition are approved in advance" by the board of directors of the issuer. When adopting this rule, the SEC noted that "[t]ypically, where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's

securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 37260, 61 Fed. Reg. 30376, 30377 (June 14, 1996). A person may be deemed a director for purposes of Section 16 of the Exchange Act by expressly or impliedly "deputizing" another to serve on its behalf. *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section II.F.2.d. Appointment of a director of the issuer in connection with status as a controlling shareholder is sufficient to establish director by deputization. *See Roth v. Perseus, L.L.C.*, 2006 WL 2129331 (S.D.N.Y. July 28, 2006); *Segen v.CDR-Cookie Acquisitions, L.L.C.*, 2006 WL 59550 (S.D.N.Y. January 4, 2006). The SEC has noted that a "person who has the power, by agreement or otherwise, to name another to be a corporate director is likely to have the same sort of access to inside information by reason of that relationship as any other insider and should be considered a director for purposes of Section 16(a) of the Exchange Act." *Interpretive Release on Rules Applicable to Insider Reporting and Trading*, Exchange Act Release No. 188114, 1981 WL 31301, at *5 (September 24, 1981). A showing that the director had a relationship with the deputizer that allowed the director routinely to influence the deputizer's investment policy, or at least its investment policy regarding the issuer, is evidence of deputization. *See Romeo and Dye,*

*Section 16 Deskbook*, January 2007, Section II.F.4.d. If the director sought to protect the affairs of the deputizer and/or promote the deputizer's policies, this is evidence of deputization. *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section II.F.4.d.; *Roth v. Perseus, L.L.C.*, 2006 WL 2129331 (S.D.N.Y. July 28, 2006). If the director consulted with the deputizer before taking a position at board meetings, that is indicative of a director by deputization relationship. *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section II.F.4.d. Because Defendants were directors by deputization, the alleged "sales" transactions are exempt under Rule 16b-3, and thus, no Section 16 liability may be imposed on Defendants because there is no "sale" of securities under Section 16.

       2.   The alleged "sale" transactions identified in the Complaint are excluded from Section 16(b) liability because they were unorthodox transactions that did not present the possibility for speculative abuse. Unorthodox transactions that do not present the possibility for speculative abuse are excluded from Section 16(b) liability. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 593-95 (1973). In *Kern County*, the Supreme Court explained that "[i]n deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent - the realization of short-swing profits based upon access to inside

information . . . ." 411 U.S. at 594. In order to fall within the unorthodox transaction doctrine, and therefore be excluded from Section 16(b) liability, the transaction at issue (1) must be unorthodox and (2) if it is unorthodox, the transaction must not present the possibility of speculative abuse of inside information. *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 310 (2d Cir. 1998); *Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, 118 (3d Cir. 2002); *Pier 1 Imports of Georgia, Inc. v. Wilson*, 529 F. Supp. 239, 242 (N.D. Tex. 1981); *Pay Less Drug Stores v. Jewel Companies, Inc.*, 579 F. Supp. 1396, 1400-01 (N.D. Cal. 1984). With regard to whether the disposition was unorthodox, courts have looked to whether the transaction was a "garden variety voluntary cash-for-stock transaction." *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section IV.B.2.c. A disposition in a tender offer has been held to be an unorthodox transaction. *See Pier 1 Imports*, 529 F. Supp. at 242-43. With regard to the possibility of speculative abuse, courts have looked to whether the defendant had the ability to control the timing and circumstances of the unorthodox transaction and whether the defendant had access to inside information about the issuer. *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section IV.B.2.c. Under the unorthodox transaction doctrine, the alleged "sale" transactions were not "sales" for Section 16 purposes. thus, no Section 16 liability may be imposed on Defendants.

3. The alleged "purchase" transactions identified in the Complaint are also excluded from Section 16(b) liability because they were unorthodox transactions that did not present the possibility for speculative abuse. As set forth previously, unorthodox transactions that do not present the possibility for speculative abuse are excluded from Section 16(b) liability. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 593-95 (1973). In *Kern County*, the Supreme Court explained that "[i]n deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent – the realization of short-swing profits based upon access to inside information . . . ." 411 U.S. at 594. In order to fall within the unorthodox transaction doctrine, and therefore be excluded from Section 16(b) liability, the transaction at issue (1) must be unorthodox and (2) if it is unorthodox, the transaction must not present the possibility of speculative abuse of inside information. *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 310 (2d Cir. 1998); *Levy v. Sterling Holding Co., LLC*, 314 F.3d 106, 118 (3d Cir. 2002); *Pier 1 Imports of Georgia, Inc. v. Wilson*, 529 F. Supp. 239, 242 (N.D. Tex. 1981); *Pay Less Drug Stores v. Jewel Companies, Inc.*, 579 F. Supp. 1396, 1400-01 (N.D. Cal. 1984). With regard to whether the disposition was unorthodox, courts have looked to whether the transaction was a "garden variety voluntary cash-for-

stock transaction." *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section IV.B.2.c.  A disposition in a tender offer has been held to be an unorthodox transaction.  *See Pier 1 Imports*, 529 F. Supp. at 242-43.  With regard to the possibility of speculative abuse, courts have looked to whether the defendant had the ability to control the timing and circumstances of the unorthodox transaction and whether the defendant had access to inside information about the issuer.  *See Romeo and Dye, Section 16 Deskbook*, January 2007, Section IV.B.2.c.  Under the unorthodox transaction doctrine, the alleged "purchase" transactions were not "purchases" for Section 16 purposes.  Thus, no Section 16 liability may be imposed on Defendants.

        4.   Certain of the alleged transactions are excluded from Section 16 liability because they were in-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributees, not "sales" or "purchases" under Section 16.  In-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributes are not "sales" by the distributing entity or "purchases" by the recipient under Section 16 of the Exchange Act.  *See Romeo and Dye, Section 16 Treatise and Reporting Guide, Second Edition*, § 10.06[6].  These transactions lack the indicia of a sale or a purchase due to the absence of consideration for the distribution and its nature as a return of capital.  Because certain of the transactions alleged

in the Complaint were in-kind distributions made on a pro-rata basis for no consideration in proportion to the respective interests of the distributees, they were not "purchases" by Defendants under Section 16.  Accordingly, no Section 16 liability may be imposed on Defendants.

   5.   Certain of the "purchase" transactions alleged in the Complaint are exempt pursuant to SEC Rule 16(b)-3 as pro rata distributions upon liquidation of a partnership.  Thus, no Section 16 liability may be imposed on Defendants for these transactions.

   6.   Defendants assert that Plaintiff does not have standing to bring this action.  The legal basis for this affirmative defense is as follows.  "[I]n order to invoke derivative standing pursuant to Federal Rule of Civil Procedure 23.1 and New York Business Corporation Law § 626(b), a plaintiff must have owned stock in the corporation throughout the course of the activities that constitute the primary basis of the complaint. . . . a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired."  *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 298 (2d Cir. 2003).

   **j.   Statement of the measure and burden of proof:**

   Plaintiff bears the burden of establishing a breach of Section 16(b) by defendants and providing *prima facie* proof of the maximum amount of profits realized.  *Stella v. Graham-Paige*

*Motors Corp.*, 232 F.2d 299, 302 (2d Cir.), *cert. denied*, 352 U.S. 831 (1956). *Id.* The burden then shifts to defendants to establish that the profits were less than the amount claimed by plaintiff. Defendants bear the burden establishing an exception to liability. *Securities Exchange Commission v. Cavanagh*, 445 F.3d 105, 114 (2d Cir. 2006); *Rosen v. Brookhaven Capital Management Co., Ltd.*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002.

    **k.**    **Amendment of the Pleadings:**

The parties propose a deadline of April 30, 2008 for amendment of the pleadings.

    **l.**    **Assignment of Case to Magistrate:**

All parties do not consent to the assignment of this case to a Magistrate Judge for trial.

    **m.**    **Fed.R.Civ.P. 26(a) disclosures:**

The parties have agreed to complete Rule 26(a) initial disclosures by <u>February 15, 2008</u>.

    **n.**    **Discovery Schedule:**

Discovery will be required concerning defendants' transactions in equity securities of LSB, and defendants' affirmative defenses as set above.

The parties propose a fact discovery cut-off of <u>June 30, 2008</u>.

    **o.**    **Expert Evidence:**

The parties propose a deadline for completion of expert discovery of <u>August 15, 2008</u>.

p.  **Limitations on Discovery:**

The parties believe that discovery should be conducted in accordance with the Federal Rules of Civil Procedure and Local Rules of this court.

q.  **Dispositive Motions:**

The parties propose a dispositive motion deadline of August 15, 2008. Defendants believe that there is a strong likelihood that this case will be resolved through a dispositive motion.

r.  **Status of Settlement Discussions:**

The parties have engaged in settlement discussions which are ongoing. Defendants are willing to participate in mediation in Kansas or Oklahoma.

s.  **Trial:**

Plaintiff demands a jury trial. Defendants are prepared to consent to a bench trial. It is expected that the case will require three (3) trial days.

t.  **Other Orders:**

The parties submit a proposed Stipulated Protective Order for entry by the Court.

Dated: February 9, 2008

BRAGAR WEXLER & EAGEL PC

By 

Paul D. Wexler (PW9340)

885 Third Avenue
New York, New York 10022
(212) 308-5858
E-Mail: Wexler@bragarwexler.com


GLENN F. OSTRAGER
OSTRAGER CHONG FLAHERTY
 & BROITMAN P.C.

570 Lexington Avenue
New York, New York 10022
(212) 681-0600
E-Mail: gostrager@ocfblaw.com

Attorneys for Plaintiff



SHOOK, HARDY & BACON LLP


By:     /s/Gregory T. Wolf
        Gregory T. Wolf
        Sarah T. Lepak
        Admitted Pro Hac Vice
        2555 Grand Boulevard
        Kansas City, Missouri 64108
        Tel: (816) 474-6550
E-Mail: gwolf@shb.com,
slepak@shb.com

Attorneys for Defendants
Kent C. McCarthy, Jayhawk Capital
Management, L.L.C., Jayhawk
Institutional Partners, and
L.P. Jayhawk Investments, L.P.